**PRODUCE TERMINAL REALTY CORP.**

v.

**NEW YORK, N. H. & H. R. CO.**

Civ. No. 53-983.

United States District Court, D. Massachusetts.

Nov. 23, 1953.

George Alpert, Alpert & Alpert, Boston, Mass., for plaintiff.

Edmund J. Moore, William Q. Keenan, Boston, Mass., for defendant.

FORD, District Judge.

This action was originally brought as a suit in equity in the Massachusetts Superior Court for Suffolk County and was removed by defendant to this court. Plaintiff now moves to remand the action to the state court.

In 1952, plaintiff purchased from defendant three freight houses in South Boston adjacent to defendant's yards 6 and 7. In an agreement collateral to this purchase defendant agreed that it would devote yards 6 and 7 to the use of plaintiff and further agreed that

"In addition to said yards 6 and 7 the Railroad agrees to devote yard 5 in its Boston freight terminal or such part thereof as may be reasonably required for the adequate, prompt and convenient delivery of the traffic of the merchants doing business on the premises of the Realty Co., provided however, if at any time in the future the Railroad shall devote yard 5 to uses incompatible with the use above provided for, then in that event it will devote in addition to yards 6 and 7 such other yard or yards as are closest in proximity to the premises of the Realty Co. to such use so as to ensure the adequate, prompt and convenient delivery of the traffic of the merchants doing business on the Realty Co.'s premises."

Plaintiff and its predecessor corporation had for many years carried on the business of receiving and selling fruits and vegetables at the freight houses in question, leasing them from the railroad. Much of this merchandise is not unloaded into the freight houses but the cars are placed on tracks in the yards and samples are removed therefrom to show to cus-

tomers who, when they make purchases, send trucks to take the produce from the cars. For many years yards 6 and 7 have been used for handling such cars consigned to plaintiff. Some of plaintiff's cars have also been placed in yard 5, which in defendant's tariffs is designated as a public bulk yard and has been available for the use of numerous other consignees.

Early in 1953, defendant railroad began the erection of a building in yard 5 which it leased beginning September 1, 1953 to H. Harris Realty Co. Inc., which then transferred to this building a fruit and vegetable auction which it had formerly conducted in Charlestown. This building permanently occupies space formerly available for placing cars in yard 5, and the transfer of the auction business means that some 4,000 additional carloads of produce per year will be placed in yard 5. Plaintiff has objected to these changes in the status of yard 5 on the ground that the proportional share of the facilities of yard 5 which from now on is available to it and the facilities of yard 3, which the railroad has offered to make available to it, are not adequate to ensure the adequate, prompt and convenient delivery of the traffic of the merchants doing business on its premises.

Plaintiff brought its suit in the state court and before removal secured a temporary restraining order, later continued in force pending final determination of the suit, by which defendant is enjoined from "using any portion of yard 5 required for the traffic of the plaintiff's licenses."

Defendant thereafter removed the case to this court on the ground that it was one arising under the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. (hereinafter called the Act). It is defendant's contention that the service which plaintiff seeks to obtain by its action is an undue and unreasonable preference or advantage to a particular customer under § 3(1) of the Act, and that the contract previously mentioned, if given the interpretation for which plaintiff contends, is illegal.

Plaintiff moves to remand on the ground that this court lacks jurisdiction since the complaint sets forth no cause of action under federal law. The complaint, says plaintiff, simply sets forth the making of a contract, its breach by defendant, and fraud by defendant inducing plaintiff to enter into the transaction, and asks for specific enforcement of the contract, an injunction against further violation and damages. No question of federal law appears in this, plaintiff contends, and there is no question of federal law involved until defendant sets up the alleged illegality of the contract and brings in the Interstate Commerce Act as a matter of affirmative defense.

■■ There is no dispute as to the general rule of law governing the decision here. The question of whether this action is removable as one involving a federal question depends upon whether the cause of action set forth by plaintiff is one arising under federal law. Jurisdiction is not conferred by the fact that defendant may rely upon federal law as a matter of defense. The question must be decided on the basis of what appears in the complaint well pleaded, unaided by anything in the answer or petition for removal. Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Great Northern Railway Co. v. Alexander, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713.

■ The decision must rest, however, on the facts set forth in the complaint. If the basic right asserted is one based on federal law, then the case is properly here, whether or not the complaint expressly states that the right sought to be enforced is a federal one. It is the real nature of the claim and not the characterization given it by plaintiff which must govern. Strauss v. Schweizerische Kreditanstalt, D.C., 45 F.Supp. 449, 450.

■ The gravamen of plaintiff's complaint here is that defendant has failed to provide plaintiff and its licensees with

adequate facilities for the handling of its traffic in fruits and vegetables. The relief sought is to compel the defendant railroad to "provide track facilities for the track cars of the plaintiff's licensees for the adequate, prompt and convenient delivery of their traffic." These facilities are clearly a service included within the transportation of goods in interstate commerce which defendant is required by § 1(4) of the Act to furnish upon reasonable request. Nutile Fruit Co. v. Boston & Maine Railroad, 155 I.C.C. 221. The complaint thus asserts a right arising under the Act.

It is true that the complaint says nothing about the Act and sets forth only the contract between the parties as the basis of the rights which it seeks to enforce. This cannot change the essential nature of the action. In the Interstate Commerce Act Congress has provided a comprehensive scheme of regulation determining the respective rights and duties of shippers and carriers. If the rights which plaintiff claims under its contract are only those given by the Act, the contract adds nothing to them, and the mere fact that the parties have spelled out these rights in a private contract does not change the fact that they arise essentially from the Act. Allen v. New York, P. & N. R. Co., 4 Cir., 15 F. 2d 532, 533; Williams v. New York, P. & N. R. Co., 4 Cir., 11 F.2d 363, 364, 45 A.L.R. 437.

From the complaint it is clear that the real dispute between the parties is as to whether space in yard 5 is to be allotted to plaintiff or to other customers of the carrier. The Act entitles plaintiff to its fair share of these facilities and forbids the railroad to make any preference or discrimination in favor of one of the users as against another. If, as has been said, plaintiff seeks only its fair share of the facilities of yard 5, the Act gives it a right thereto and any contract adds nothing to that right. If plaintiff's contract requires the defendant to give plaintiff more than its fair share, then the contract would require a violation of § 3(1) of the Act and must be held invalid. Chicago & Alton R. Co. v. Kirby, 225 U.S. 155, 165, 32 S.Ct. 648, 56 L.Ed. 1033. From another point of view, if the wrong charged by plaintiff is that the railroad is giving to other users more than their fair share of the space in yard 5 than the action is essentially one under §§ 9 or 23 of the Act.

The cause of action set forth by the complaint is in substance one to enforce the rights of the plaintiff given by the Interstate Commerce Act. The case thus differs from H. N. Thayer Co. v. Binnall, D.C., 82 F.Supp. 566, where plaintiff not only purported to base its case on an alleged violation of its common law rights, but also did not set forth in its complaint the facts essential to make out a case under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. Neither is this case like Romick v. Bekins Van & Storage Co., 5 Cir., 197 F. 2d 369. The complaint there set forth simply an action to compel defendant corporation and its directors to declare certain dividends. Federal law was not necessarily involved until defendants asserted certain rights to stock in the corporation under an order of the Interstate Commerce Commission. Here the basis of federal law is in the case from the beginning, since the facts which plaintiff alleges in what purports to be an action to enforce a contract are also the facts which would constitute a cause of action under the Interstate Commerce Act, and what plaintiff asserts as a contract right is basically a right arising under that Act.

The complaint also contains certain allegations as to misrepresentations by defendant. The questions of whether a separate and independent cause of action for deceit is stated in the complaint, and of whether, if that is so, that cause of action should be retained here, were not fully argued by the parties and are not passed upon here.

Plaintiff's motion to remand to the state court is denied.